### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **M.B.,** by and through her Next Friends and Natural Parents, KEVIN BAUMAN and CARA BAUMAN<br><br>Plaintiff,<br><br>*vs.*<br><br>**CITIZENS MEDICAL CENTER, INC.**,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. _____<br>)<br>)<br>)<br>) |

### COMPLAINT

For her claim against Defendant Citizens Medical Center, Inc., Plaintiff M.B., a minor, by and through her natural parents and Next Friends, Kevin Bauman and Cara Bauman, by and through her counsel, alleges:

1. Plaintiff M.B. ("M.B.") is a minor born on ____, 2013.

2. Kevin Bauman ("Mr. Bauman") is the natural father of M.B., and brings this suit in his representative capacity as the father and Next Friend of M.B.

3. Cara Bauman ("Mrs. Bauman") is the natural mother of M.B., and brings this suit in her representative capacity as the mother and Next Friend of M.B.

4. Defendant Citizens Medical Center, Inc. ("CMC"), is a Kansas not-for-profit corporation and at all times relevant to this litigation, CMC was engaging, in whole or in part, in the business of operating a hospital in Colby, Thomas County, Kansas, and providing healthcare goods and services to members of the public, on an in-patient or out-patient basis, including but not limited to Mrs. Bauman and M.B.

5. The hospital operated by CMC in Colby, Thomas County, Kansas, is known as "Citizens Medical Center."

– 2 –

6. M.B. resides in Burlington, Kit Carson County, Colorado, with her natural parents, Mr. and Mrs. Bauman.

7. As of the filing of this lawsuit, Mr. and Mrs. Bauman in their individual capacities, as the natural parents of M.B., are citizens and residents of State of Colorado. M.B. is therefore a citizen and resident of the State of Colorado.

8. CMC is a Kansas not-for-profit corporation, with its principal place of business in Colby, Thomas County, Kansas, and is a citizen and resident of the State of Kansas.

9. This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because M.B. is a citizen and resident of the State of Colorado, and CMC is a citizen and resident of the State of Kansas, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

10. At all times relevant to this litigation, CMC employed nurses to provide healthcare goods and services to members of the general public on an in-patient or out-patient basis, including but not limited to M.B. and her mother ("the CMC nursing staff"). The negligent acts and/or omissions of the CMC nursing staff are imputed to CMC as a matter of law, and CMC is vicariously liable for all such negligent acts and/or omissions.

11. Prior to July 9, 2013, at a time presently unknown to M.B., Darren R. Matchell, D.O. ("Dr. Matchell"), applied for and was granted privileges at Citizens Medical Center, including but not limited to authorization to use a vacuum extractor during labor and delivery.

12. On July 9, 2013, Mrs. Bauman was admitted to Citizens Medical Center where a Cervidil induction was started in the evening hours.

13. Following Mrs. Bauman's admission to the hospital, CMC nursing staff began providing her with healthcare goods and services, thereby establishing a hospital-patient and a nurse-patient relationship with Mrs. Bauman and the then-unborn M.B.

14. During the early morning hours of July 10, 2013, Mrs. Bauman began to have labor contractions, and although they continued to some degree during that time frame, labor was not progressing.

15. At approximately 9:00 a.m., on July 10, 2013, Mrs. Bauman was offered the option to continue with the labor or return on July 14, 2013, to again attempt a Cervidil induction. She chose to continue.

16. Shortly after 9:00 a.m., on July 10, 2013, administration of Pitocin was started.

17. At approximately 12:00 p.m. on July 10, 2013, Mrs. Bauman began leaking fluids and it was thought that her water had broken.

18. At approximately 5:50 p.m. on July 10, 2013, Mrs. Bauman was administered an epidural for her pain, and she continued to labor.

19. Mrs. Bauman continued to have contractions throughout the evening of July 10, 2013, and into the early morning hours of ____, 2013. During this time, the amount of Pitocin being administered to her was increased.

20. At approximately 2:25 a.m. on ____, 2013, it was determined that Mrs. Bauman was completely dilated and she began pushing.

21. Shortly after 4:00 a.m. on ____, 2013, the Pitocin dosage being administered to Mrs. Bauman was increased.

22. At approximately 4:25 a.m. on ____, 2013, Dr. Matchell, with the assistance of the CMC nursing staff, used a vacuum extractor on M.B.

23. At approximately 5:18 a.m., Dr. Matchell requested the CMC nursing staff to provide him with a new vacuum, anticipating a second application of a vacuum extractor. In violation of hospital policy and manufacturer recommendations, the nursing staff provided the

– 3 –

new vacuum to Dr. Matchell. At approximately 5:22 a.m., Dr. Matchell applied a new vacuum extractor to M.B.

24. At 5:50 a.m. on ____, 2013, the administration of Pitocin was stopped. Mrs. Bauman was instructed to push as hard as she could.

25. At 6:05 a.m. on ____, 2013, M.B. was delivered.

26. Prior to M.B.'s delivery, her fetal heart rate tracings were non-reassuring for a significant period of time.

27. At the time of delivery, M.B. was found to be extremely depressed with APGAR scores of 2 at one minute, 4 at five minutes, and 6 at ten minutes.

28. Subsequent to the delivery, M.B. was transferred to a hospital in Denver where she was diagnosed with hypoxic ischemic brain damage that occurred during labor and prior to delivery.

29. CMC and its nursing staff owed a duty to both Mrs. Bauman and M.B., to use ordinary care and diligence in using that degree of learning and skill ordinarily possessed and used by hospitals and nurses in the community in which the hospital is located, or in similar communities, and under like circumstances.

30. CMC breached its duty to Mrs. Bauman and M.B. to use ordinary care and diligence in using that degree of learning and skill ordinarily possessed and used by hospitals in the community in which the hospital is located, or in similar communities, and under like circumstances, because CMC negligently:

    a.    Failed to provide adequate training for nursing staff regarding vacuum extractors and the administration of Pitocin;

    b.    Failed to have in place adequate policies, procedures and protocols for the use of

    vacuum extractors and the administration of Pitocin, or in the alternative, had adequate policies, procedures and protocols for the use of vacuum extractors and the administration of Pitocin, but failed to enforce them with respect to the labor and delivery resulting in the birth of M.B.;

  c. Granted full obstetrical privileges to a physician who did not have the knowledge or skills to safely implement those privileges, and

was otherwise negligent in a manner not presently known to M.B.

  31. The CMC nursing staff breached its duty to Mrs. Bauman and M.B. to use ordinary care and diligence in using that degree of learning and skill ordinarily possessed and used by hospital nurses in the community in which the hospital is located, or in similar communities, and under like circumstances, because the CMC nursing staff negligently:

  a. Failed to provide appropriate assistance to Dr. Matchell in use of the vacuum extractor, including but not limited to failing to keep track of an alert Dr. Matchell to the duration of the application of vacuum;

  b. Violated hospital policy and manufacturer instructions for use of the vacuum extractor by providing Dr. Matchell with a second vacuum extractor after a failed first application and after a prolong application of a vacuum;

  c. Failed to properly administer Pitocin during the labor and delivery resulting in the birth of M.B.;

  d. Failed to advocate for a timely Cesarean section in the face of failed vacuum extraction;

  e. Failed to advocate for a timely Cesarean section when there was evidence of fetal distress on the fetal heart monitoring strips, and

was otherwise negligent in a manner not presently known to M.B.

32.  The above described negligence of CMC and the nursing staff directly caused or contributed to cause the following injuries to M.B.:

 a. Hypoxic ischemic brain damage;

 b. Spastic quadriplegic cerebral palsy;

 c. Cognitive impairment;

 d. Impaired communication;

 e. Impaired impulse control and executive functioning;

 f. Fine and gross motor impairment;

 g. Past and future emotional distress and mental anguish;

 h. Past and future physical pain and suffering;

 i. Impaired earning capacity;

 j. Impaired ability to perform activities of daily living and household services;

 k. Past and future expenses for health care goods and services, the full nature and extent of which are not presently known, but including, although not limited to, medical and attendant care daily for the rest of her life, and

other injuries, the nature and extent of which are not presently known.

**WHEREFORE,** Plaintiff M.B. prays for judgment against Citizens Medical Center, Inc., in an amount in excess of $75,000.00 that is fair and reasonable; for the costs she incurs in this litigation, and for such other or further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

/s/ Samuel K. Cullan
Samuel K. Cullan (KS #13679)

>Ryan G. Terril (KS #16412)
>CULLAN & CULLAN
>4900 Main Street, Suite 310
>Kansas City, Missouri  64112
>(816) 861-7600 Telephone
>(816) 756-1908 Facsimile
>sam@cullan.law
>ryan@cullan.law
>ATTORNEYS FOR PLAINTIFF

**DEMAND FOR JURY TRIAL
AND TRIAL LOCATION REQUEST**

Plaintiff M.B., by and through her counsel, hereby demands a jury trial on all issues triable by a jury, and requests that the site of the trial be Kansas City, Kansas.

>Respectfully submitted,
>
>/s/ Samuel K. Cullan
>Samuel K. Cullan (KS #13679)
>Ryan G. Terril (KS #16412)
>CULLAN & CULLAN
>4900 Main Street, Suite 310
>Kansas City, Missouri  64112
>(816) 861-7600 Telephone
>(816) 756-1908 Facsimile
>sam@cullan.law
>ryan@cullan.law
>ATTORNEYS FOR PLAINTIFF